**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Gary Patrick Callahan,<br><br>   Defendant. | CIV-97-0515-PHX-RGS<br>CR-89-0178-PHX-RGS<br><br>**ORDER** |

   Following Defendant's appeal from the District Court's denial of his motion to alter or amend the judgment denying his 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence and the Court's denial of his motion for an evidentiary hearing, the Ninth Circuit U.S. Court of Appeals affirmed in part, vacated in part and remanded the case for an evidentiary hearing on two issues: (1) whether trial counsel rendered ineffective assistance in failing to utilize available forensic evidence, and (2) whether trial counsel rendered ineffective assistance in failing to investigate or make known to the jury an alleged romantic relationship between a central prosecution witness and Defendant's then-girlfriend, co-defendant Betty Lindstrom.

   Accordingly, the Court held an evidentiary hearing on June 23, 2005, after which the Court took the matter under advisement. Having considered the evidence and arguments presented at the hearing and set forth in the memoranda filed by the parties, the pertinent portions of the record, as well as the applicable law, the Court now enters its ruling.

I.       STANDARD OF REVIEW

Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order for the Defendant to prevail on his claims of ineffective assistance of counsel, he must demonstrate that (1) his attorney's performance was unreasonable under prevailing professional standards, 466 U.S. at 688, and (2) there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694; *see also United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003).

DISCUSSION

      1.       <u>Whether trial counsel was ineffective due to lack of experience.</u>

The Court first addresses Defendant's contention that his attorney, Ken Freedman, was ineffective because he was an "inexperienced" attorney who had conducted only one trial prior to the time he was appointed to represent Defendant on June 26, 1992. [*See* Defendant's Opening Brief, Doc. # 892, p. 14; Defendant's Brief to the Ninth Circuit, Plaintiff's Exhibit 30, p. xv] At the June 23, 2005 evidentiary hearing, Plaintiff presented evidence to rebut this contention, including documentation showing that Freedman was admitted to the Arizona State Bar in 1980 [Plaintiff's Exhibit 1], had been certified by the State Bar Board of Legal Specialization as a Certified Specialist in Criminal Law in 1985 [Plaintiff's Exhibit 5], and had been appointed to serve as a Judge Pro Tempore of the Superior Court in Maricopa County in 1986 [Plaintiff's Exhibit 6]. In response, Defendant's advisory counsel conceded that Freedman "was an experienced lawyer." [Doc. # 938, p. 73] Accordingly, the Court finds Defendant's argument that Freedman's alleged ineffectiveness was due to his lack of experience to be without merit.

Next, the Court will address each of Defendant's specific allegations of ineffective assistance of trial counsel.

/ / /

/ / /

      2.       <u>Whether trial counsel rendered ineffective assistance in failing to utilize available forensic evidence.</u>

- 2 -

1    In his opening brief, as well as in a separate motion titled "Brady Violations:
2 Defendant's Motion for New Trial" [Doc. # 874], Defendant argued that Plaintiff
3 "conceal[ed]" allegedly exculpatory evidence in the form of hair, fiber, fingerprint, and
4 handwriting test results as well as the results of certain "Chemcon" tests in violation of *Brady*
5 *v. Maryland*, 373 U.S. 83, 87 (1963) (holding that a prosecutor's suppression of evidence that
6 is favorable to an accused violates the Fourteenth Amendment Due Process Clause where it
7 is material to issues of guilt).  Defendant also argued that counsel was ineffective for not
8 asking for and using this evidence at trial.  At the evidentiary hearing, however, after Plaintiff
9 referenced numerous trial transcript excerpts that demonstrated that Defendant indeed had
10 received the Chemcon reports as well as the forensic test results, Defendant advised the Court
11 that his *Brady* argument did not warrant further consideration.  [Doc. # 938, p. 132]
12 Accordingly, the Court finds Defendant's claim of ineffective assistance of counsel based on
13 counsel's alleged failure to request said test results to be without merit and will deny
14 Defendant's Motion for New Trial based on alleged *Brady* violations.

15    In his Reply to Government's Memorandum and Citation, Defendant argues that
16 counsel was nevertheless ineffective for "<u>utterly</u> fail[ing] to use the exculpable results of the
17 forensic tests at issue."  [Doc. # 943, p. 5]  A review of the record belies Defendant's
18 contention.  At the evidentiary hearing, Plaintiff cited to Freedman's opening statement
19 wherein counsel referred to the hair and fingerprint evidence, stating to the jury that "they
20 never attributed [this evidence] to anybody.  They couldn't find to whom it belonged." [Doc.
21 # 938, pp. 94-95; Plaintiff's Exhibit 37]

22    Plaintiff further referenced Freedman's examination of FBI Special Agent Ron Myers.
23 When counsel asked Agent Myers whether any of the fingerprints taken from certain
24 packages of the cocaine was determined to be that of Defendant, Plaintiff stipulated that
25 "[t]here were no fingerprints of the defendant on the packages." [Doc. # 938, p. 95; Plaintiff's
26 Exhibit 38] Thereafter, Freedman sought, and received, stipulations that none of Defendant's
27 fingerprints was found on any of the cocaine seized and that none of the hair samples found
28 in the storage locker was attributed to Defendant.  [Doc. # 938, p. 96, Plaintiff's Exhibit 38]

1  Plaintiff also referenced Freedman's summation wherein he tells the jury that the hair and
2  fingerprint samples "can't be proven to belong to Gary Callahan. . . . Hairs fall out. You don't
3  have any hairs. You don't have any fingerprint samples from them." [Doc. # 938, pp. 96-97;
4  Plaintiff's Exhibit 39]

5  Further, assistant defense counsel Barbara Spencer questioned defense expert Dr.
6  Brian Finkle with respect to the results of certain Chemcon tests. These tests showed that
7  the cocaine lot seized at the border in 1988 was approximately 80 percent cocaine
8  hydrochloride and that the cocaine lot seized from Dr. Bartel in 1989 was approximately 90
9  percent cocaine hydrochloride. Dr. Finkle testified that he believed that the results of these
10 tests were accurate. Ms. Spencer then asked him whether there was any evidence in the test
11 results that would show that the two different lots of cocaine came from the same source.
12 Dr. Finkle replied, "Not scientific evidence that I know of, no." He agreed that the cocaine
13 could be from different lots. [Doc. # 938, pp. 117-18; Plaintiff's Exhibit 27]

14 In his summation, Freedman argued to the jury that the "Bartel seizure had none of
15 that ["R-1" and "amigo" logos] stamped on it. The purity we've talked about until you're blue
16 in the face. To a scientific certainty, no one can say that that cocaine matched. That alone
17 tells you you do not have a basis," which constitutes "reasonable doubt." [Trial Transcript,
18 February 3, 1993, Doc. # 868, pp. 60-61] Accordingly, because the record demonstrates that
19 defense counsel presented the results of the forensic and chemical tests to the jury and argued
20 the exculpatory nature of said results, the Court finds no merit in Defendant's claim that
21 counsel was ineffective for failing to use this evidence.

22     3.    <u>Whether trial counsel rendered ineffective assistance in failing to investigate or make known to the jury an alleged romantic relationship between a central prosecution witness and Defendant's then-girlfriend, co-defendant Betty Lindstrom.</u>

24 Defendant claims that Freedman was ineffective for not cross-examining government
25 witness Glenn Waltz on Waltz's alleged sexual relationship with Betty Lindstrom. Defendant
26 contends that Waltz wanted an ongoing relationship with Lindstrom and that Waltz therefore
27 had a motive to lie so that Defendant would remain in prison, and he could pursue this
28

- 4 -

1  relationship. At the evidentiary hearing, Defendant's former counsel, Bill Walker, testified
2  that as a competent attorney, Freedman should have subpoenaed Betty Lindstrom for trial to
3  impeach Waltz, but at a minimum, if she were not available, Freedman should have cross-
4  examined Waltz regarding that relationship. [Doc. # 938, pp. 29-30]

5  Plaintiff points out that at the time of Defendant's trial, Betty Lindstrom was a co-
6  defendant pending trial and would not have been able to be a witness without implicating
7  herself. [Doc. # 921, p.4] Plaintiff also points to the discussion at the January 25, 1993 pre-
8  trial conference between Freedman and counsel for the government regarding sexual conduct
9  by Defendant and certain government witness:

> MR. FREEDMAN: Next to the last, Your Honor, I believe this may have already been taken care of when I spoke to Mr. Lacey before, and throughout a number of days a number of these issues have been talked about. There were allegations of a number of illicit or adulterous affairs on Mr. Callahan's part. Katie Mantano was an alleged former lover, Betty Lindstrom as well. And there are allegations of others. And I would ask that these be precluded as well for reasons of prejudice, your Honor.
>
> MR. LACEY: Same response, Your Honor. Not in our case in chief. If Betty gets on the stand it may cause a lot of doors to be opened, and we will go into it at that time.
>
> Another thing while we are on that topic I think I should bring up. Earlier on I wasn't involved in this case, but in talking with people that were, I have been advised that there were allegations at least that Mr. Walker advised me when Waltz surfaced as a witness, that Betty Lindstrom had had an affair with Waltz at one point in time. She similarly had allegations of having had some incestuous relationships with her brother, Dr. Bartel, at one time back when they were minors, or that's the allegation, at least, that was thrown out there.
>
> Perhaps we should surface these issues at this point because it could be a very messy trial for all parties concerned if those topics are gone into on cross-examination of the government witnesses. And I think we should get that squared away if at all possible. We do not intend to go into those relationships in our case as I indicated.
>
> MR. FREEDMAN: I concur with Mr. Lacey. If the Court is ruling on this, I was made aware of the fact that Betty Callahan – I'm sorry, Betty Lindstrom . . . allegations were that she had been molested by her brother involuntarily, Dr. Bartel. At this point in time I'm not aware per se whether I would bring that up or even attempt to use that against Dr. Bartel during his testimony. But I suppose the potential is always there, and a ruling by the Court would be germane.
>
> THE COURT: Why don't we simply grant the motion in limine with respect to that issue in its broad form, and if either party feels that the evidence has

|  |  |
|---|---|
| 1 | developed in a manner that calls upon the party that would proffer such evidence to want to do so, why then we can discuss it outside the hearing of the jury and determine if it is appropriate or not. |
| 2 | |

MR. FREEDMAN: Along that same vein then, Your Honor, Glenn Waltz also thought–I think Mr. Lacey had mentioned this, had had an affair with Betty Lindstrom. And also he had an affair with another lady which resulted in a child being born out of wedlock. And I assume that your admonition here would apply to that as well?

THE COURT: Yes.

MR. LACEY: That would be fine. We don't intend to go into it and the record should likewise reflect that Dr. Bartel denies any of these allegations that were thrown out earlier on, and I understand and in talking with him since he will be testifying within the next week or so that he was threatened by Betty at one point in time that she was going to charge him with molesting young boys at one time to get him off the trail that he was going down.

[Doc. # 866, pp. 36-38]

Counsel for Plaintiff and Defendant complied with the Court's ruling and avoided examining or cross-examining witnesses regarding their sexual misconduct.

Defendant argues that Freedman "stipulated away" his Sixth Amendment confrontation right on the issue of Waltz's bias and motivation to lie by agreeing not to question Waltz regarding the relationship. [Doc. # 943, p. 3] A review of the trial transcript, however, reveals that Freedman's cross-examination of Waltz developed testimony about Waltz's bias against Defendant and his motivation to lie. Specifically, Freedman questioned Waltz about the benefits he received from the government for his cooperation, including immunity from prosecution and a new job. Freedman also questioned Waltz about Defendant being promoted to Public Information Officer with its attendant benefits while in contrast, Waltz never received a promotion during this time. [Doc. # 567, pp. 51-54] The Court finds no confrontation right violation under these circumstances.

Defendant also called his sister, Nora Callahan, to testify at the evidentiary hearing regarding several e-mail messages sent to her in 2000, seven years after the conclusion of the trial, by an alleged juror, stating that if she had known of the relationship between Waltz and Lindstrom, she would not have found Defendant guilty. [Doc. # 938, pp. 66-69; Defendant's Exhibit 118] On cross-examination, however, Nora Callahan testified that in the five years

- 6 -

1  since receipt of the e-mails, she still did not know the sender's name or whether in fact the
2  sender was a juror. [Doc. # 938, p. 69] Once again, the Court enters its finding that these
3  unverified e-mails are hearsay and do not constitute credible or admissible evidence, and
4  therefore the Court attributes no weight to them in reaching its determination on the issue
5  before it.

6  With respect to the testimony of Bill Walker that, in his opinion, Freedman should
7  have called Lindstrom to testify regarding her relationship with Waltz or, at a minimum,
8  cross-examined Waltz on the issue, the fact that Walker disagreed with Freedman's trial
9  strategy does not mean that Freedman's approach to the discrediting of this government
10 witness amounted to ineffective assistance. As discussed above, Freedman developed
11 evidence of Waltz's bias and motive to lie. The Court concludes that the evidence presented
12 at the evidentiary hearing does not demonstrate that Freedman was ineffective for not making
13 known to the jury the alleged relationship between Waltz and Lindstrom.

14 Nevertheless, even if Freedman's failure to make this relationship known to the jury
15 might be construed as ineffective assistance of counsel, the Court finds that there is no
16 reasonable probability that, but for counsel's unprofessional error, the result of the proceeding
17 would have been different. *Strickland*, 466 U.S. at 694. Even without Waltz's testimony,
18 ample evidence was presented at trial for the jury to find Defendant guilty. [*See* Doc. # 938,
19 pp. 118-123, 127-130]

20 Defendant has also raised a claim of ineffective assistance of trial counsel for failing
21 to call Bill Walker to impeach Waltz on prior inconsistent statements as well as a claim of
22 ineffective assistance of appellate counsel. Because these claims are beyond the scope of the
23 Ninth Circuit remand, the Court declines to address them.

24 Based on the foregoing,

25 **IT IS ORDERED** denying Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set
26 Aside or Correct Sentence based upon Defendant's claims of ineffective assistance of counsel
27 that are the subject of the remand. [Docs. # 722 and 759]

28 In light of the Court's determination above,

**IT IS FURTHER ORDERED** denying Defendant's Motion for Habeas Discovery: Forensic Test Results as moot. [Doc. # 869]

**IT IS FURTHER ORDERED** denying Defendant's Motion for New Trial based upon *Brady* violations as moot. [Doc. # 874]

Because Defendant's claim that he raised a *Booker*[1] objection to his sentencing enhancements at trial is outside the scope of the Ninth Circuit remand, and, in any event, because Defendant procedurally defaulted his claim by failing to raise it in his direct appeal, *see Bousley v. United States*, 523 U.S. 614, 621-22 (1998), and because *Booker* is not retroactively applicable on collateral review, *see United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005),

**IT IS FURTHER ORDERED** denying Defendant's Motion for Relief From Judgment Pursuant to Rule 60(b)(4). [Doc. # 878]

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant's Motion to Take Judicial Notice of Facts. [Doc. # 880] The Court grants said motion to the extent the material is pertinent to the issues of ineffective assistance of counsel set forth in the Ninth Circuit's remand; the motion is denied to the extent it pertains to issues outside the scope of the remand.

**IT IS FURTHER ORDERED** denying Defendant's Motion to Take Judicial Notice of Facts with respect to certain e-mail from an alleged juror as not being "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" pursuant to Rule 201(b) of the Federal Rules of Evidence. [Doc. # 881]

**IT IS FURTHER ORDERED** denying Defendant's Motion for Discovery of Notices of Compliance with Discovery with respect to the forensic and Chemcon tests as moot. [Doc. # 905]

**IT IS FURTHER ORDERED** denying Defendant's Motion to Compel Discovery Pursuant to FRCP 37(a)(3) with respect to his *Brady* violation claim as moot. [Doc. # 907]

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

1   **IT IS FURTHER ORDERED** granting Defendant's Motion for Status of the Case
2   requesting resolution of the issues set forth in the June 23, 2005 evidentiary hearing.  [Doc.
3   # 927]

   DATED this 31st day of January, 2006.

   _____
   Roger G. Strand
   Senior United States District Judge